UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HUBER, INC. | CIVIL ACTION |
| VERSUS | NO. 07-7079 |
| NEPTUNE SCIENCES, INC., ET AL. | SECTION "N"  (2) |

## ORDER AND REASONS

Before the Court is Plaintiff's **Motion to Remand (Rec. Doc. 9)**. After reviewing the Petition, the Notice of Removal, the memoranda of the parties, and the applicable law, the Court grants the motion to remand for the reasons expressed herein.

### I.   FACTS

#### A.   Background

The United States Navy contracted with Avondale Shipyard/Litton Avondale Industries ("Avondale") (now known as Northrop-Grumman Avondale Operations) to build ships for the Government. Avondale then contracted with Huber, Inc. ("Huber") to build stern gates and sideport inboard bulkhead doors for the ships. Huber then contracted with Neptune Sciences, Inc. ("Neptune") to assist in the design of the stern gates and side port doors. This project was then transferred to Moving Parts, L.L.C. ("Moving Parts"), owned by Christopher Dubea ("Dubea").

#### B.   Procedural History

On September 26, 2003, Huber filed a Petition for breach of contract and damages in the 24th Judicial District Court for the Parish of Jefferson against Neptune, Dubea, Moving Parts, etc.,

claiming that improper designs, calculations, and professional errors cost Huber at least $1,018,368.40. (Petition, ¶ 20). Because Huber bore the cost of remedying Neptune's alleged errors, neither Avondale nor the Navy sustained any losses. Because neither was affected by Neptune's performance, neither sued Huber or Neptune. Huber originally claimed that the two purchase orders created in connection with Neptune's work were considered contracts to meet all structural and mechanical engineering requirements, including required analyses and drawings. (Exhibit 2 to Neptune's opposition).

In July of 2007, Neptune filed a motion for summary judgment in state court claiming that the purchase orders were for time and materials only and claiming that Neptune had not contracted with Huber to provide "complete engineering design, calculations, testing , and analyses. In Huber's opposition to that motion, Huber asserted that it had contracted verbally with Neptune to perform all structural design work, and the purchase orders simply established a purchase order number under which payment was to be made to Neptune for its engineering services.

Based on Huber's assertion that its agreement with Neptune was a verbal agreement, Neptune claims that the application of federal law is now implicated.[1] The state court denied Neptune's motion for summary judgment. Neptune now claims that there are substantial issues of federal law that prohibit the use of verbal contracts for the procurement of government contracts. Thus, Neptune has removed the case to this court based on federal question jurisdiction.

---

[1] Huber takes issue with this new argument, finding it inconsistent with the argument advanced by Neptune in its motion for summary judgment. Neptune argued in its motion that the purchase orders were written contracts between the parties, but were incomplete. Specifically, Neptune claimed that the two written purchase orders contained no warranty terms or standards of performance. Now, Neptune argues that the purchase orders were not contracts at all and, in fact, there were no written contracts between the parties  Essentially, as Huber notes, Neptune made an "insufficient writing" argument in state court in connection with its motion for summary judgment, and is now asserting a "no writing" argument here to state a basis for federal question jurisdiction.

**II.     ARGUMENTS OF THE PARTIES**

In its Notice of Removal, Neptune cites the Federal Acquisition Regulations ("FAR"), 48 C.F.R. 44.101, to argue that subcontracts (like the one between Neptune and Huber) must be in writing. Neptune claims that because uniformity is required in national defense acquisitions, the alleged failure of Huber and Neptune to contract in writing involves national security interests, making the exercise of federal jurisdiction appropriate.

In its removal papers, Neptune cites *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507, 108 S. Ct. 2510, 2515, 101 L. Ed. 2d 442 (1988), to support the assertion that the procurement of equipment by the Government is an area of uniquely federal interest. Huber claims that *Boyle* can be distinguished from this situation because in *Boyle*, the Court noted that the Government's interests were directly affected. Huber notes that the instant case is not a tort suit wherein the Government may be held responsible to a third party. In other words, Huber claims whether or not it and Neptune had a written contract will not affect the price or the willingness of a prime contractor to manufacture pursuant to government specifications. Because Huber assumed the costs of Neptune's alleged failures, the Government suffered no financial loss. Huber further notes that the *Boyle* decision requires more than a government interest to be affected. It requires a significant conflict to exist between an identifiable federal policy or interest and a state law. *Boyle*, 487 U.S. at 507. Huber claims there is no obvious federal law that would be frustrated by the application of federal law.

Huber identifies two federal circuit cases from other jurisdictions that it claims support its assertion that federal jurisdiction does not exist here. First, in *Woodward Governor Company v. Curtiss-Wright Flight Systems, Inc.*, 164 F.3d 123 (2d Cir. 1999), the Second Circuit determined that

no federal question jurisdiction existed in a dispute between a sub-subcontractor and a subcontractor involving certain systems of a fighter jet. Second, Huber cites *Northrop Corp. v. AIL Sys. Inc.,* 959 F.2d 1424 (7th Cir. 1992), wherein the Seventh Circuit determined that no jurisdiction existed over a dispute concerning a teaming arrangement (allowed by the same set of regulations advanced by Neptune) between two subcontractors involving electronic counter measures for a B1-B bomber. Huber claims that the lack of federal jurisdiction is stronger here because neither the Navy or its prime contractor (Avondale) are affected in any way by the dispute between Huber and Neptune.

In opposition, Neptune claims that the construction of subcontracts should be regulated by a uniform federal law when let under prime contracts connected with national security. *New S.D., Inc., dba BEI Systron Donner Co. v. Rockwell International Corp.*, 79 F.3d 953, 955 (9th Cir. 1996); *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640 (9th Cir. 1961). Essentially, Neptune encourages the Court to find that the subcontract here should be regulated by federal law because it was let under the contract between Avondale and the Government - despite the attenuated relationship to the prime contract with the Government. Neptune distinguishes the *Northrop* case from this case claiming that *Northrop* involved a contractual dispute between a prime contractor and a potential subcontractor (not an actual subcontractor - as is the case here). Further, Neptune asserts that the application of state law would frustrate specific objectives of federal legislation. (Notice of Removal, ¶26). Last, Neptune claims the *Woodward* case is distinguishable from this case for two reasons (1) the sub-subcontractor produced test strands that allowed the bay doors on the fighter plane to be tested before they were installed, so the test strands themselves did not become a part of the plane. Second, the parties in *Woodward* could not show that the state law conflicted with a significant federal policy. Here, Neptune asserts that applying state law allowing

verbal contracts with certain corroborated proof contradicts the federal policy that government contracts be in writing under the FAR.

## III. LAW AND ANALYSIS

### A. Legal Standard

Generally, a defendant may remove a civil case filed in state court if a federal court would have had original jurisdiction over the action. See 28 U.S.C. § 1441(a). The removing party bears the burden of establishing the existence of federal jurisdiction. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir.2002). The Court must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Title 28, U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Although "[t]here is, of course, 'no federal general common law,' " *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (*quoting Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)), "§ 1331 jurisdiction will support claims founded upon federal common law ..." *Illinois v. City of Milwaukee*, 406 U.S. 91, 101, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). The Supreme Court recognized:

> The need and authority in some limited areas to formulate what has come to be known as federal common law.... These instances are few and restricted ... and fall into essentially two categories: those in which a federal rule of decision is necessary to protect uniquely federal interests ... and those in

which Congress has given the courts the power to develop substantive law. *Texas Industries*, 451 U.S. at 640 (citations omitted).

The Supreme Court has explained that uniquely federal interests are present "where there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism...." *Illinois*, 406 U.S. at 105-06 n. 6.  This test is met "only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Texas Industries,* 451 U.S. at 641.

Federal courts are not authorized to invoke federal common law jurisdiction solely because a lawsuit involves a uniquely federal interest.  "That merely establishes a necessary, not a sufficient, condition for the displacement of state law." *Boyle*, 487 U.S. at 507.  "Displacement will occur only where ... a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law' ... or the application of state law would 'frustrate specific objectives' of federal legislation...." *Id.* (citations omitted). *See also Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966).

Thus, federal common law jurisdiction exists over this lawsuit only if (1) the dispute implicates a uniquely federal interest, and (2) a significant conflict exists between an identifiable federal policy or interest and the application of state law to the dispute or the application of state law would frustrate specific objectives of federal legislation. *Texas Industries*, 451 U.S. at 640; *Boyle*, 487 U.S. at 507.

Here, Neptune asserts that because this case involves the construction of a subcontract between Huber and Neptune let under a prime contract between the U.S. Navy and Avondale, it is

connected to national security, should be regulated by uniform federal law, and is, therefore, removable on that basis.

**B.     Analysis**

Of the cases cited by the parties on this issue, this Court finds the most analogous case to be the *Woodward* case. 164 F.3d 123. In that case, the Government contracted with the Lockheed Corporation ("Lockheed"), for the design and manufacture of a fighter plane. Lockheed then subcontracted the weapons bay doors to Curtiss-Wright Flight Systems, Inc. ("Curtiss-Wright"). Curtiss-Wright then contracted with the plaintiff, Woodward Governor Co. ("Woodward"), to produce "test stands" that would allow the bay doors to be tested before they were actually installed in the plane. The case specifically involved the subcontract between Curtiss-Wright and Woodward. It was filed in federal court on the basis of federal question jurisdiction by Woodward, claiming that the case involved a uniquely federal interest because it involved a subcontract that bore a connection to a Government contract for the design and manufacture of a fighter plane. The district court dismissed the action for lack of subject matter jurisdiction. The Second Circuit affirmed, concluding that the subcontract at issue was too far removed from issues of uniquely federal concern to call for the application of federal common law. In *Woodward*, as in the instant case, the issue involved a subcontract with parties twice removed from the actual prime contract with the Government.

As for the *Rockwell* case, the Court finds this case unpersuasive. As the *Woodward* Court noted:

> While there is no question that contracts relating directly to government liability for procurement decisions are governed by federal common law, the issue gets muddier as the contract gets further removed from the government. A subcontract for the provision of a toilet seat for a bomber, probably three or four subcontracts removed from privity with the federal government, would not seem to concern an issue of uniquely federal interest. However,

7

> the [*Rockwell*] analysis provides no touchstone to distinguish between the contract for the bomber itself and the subcontract for the toilet seat.

164 F.3d at 128.  Accordingly, the Court declines to apply the *Rockwell* rationale, instead finding *Woodward* more persuasive.

The Court also finds the *Boyle* decision distinguishable.  In *Boyle*, the Court held that the imposition of civil liability on defense contractors arising from their government work involved a uniquely federal interest because it would "directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price. Either way, the interests of the United States will be directly affected." *Boyle*, 487 U.S. at 507.  Here, the Government's interests (at least financially) are unaffected by the issue between Huber and Neptune as Huber bore the cost of remedying Neptune's alleged errors.  Neither Avondale nor the Navy sustained any losses. As pointed out by Huber, this is not a tort suit wherein the Government may be held responsible to a third party. Whether or not Huber and Neptune had a written contract will not affect the price or the willingness of a prime contractor to manufacture pursuant to government specifications.

Lastly, the Court finds the *Northrop* decision, cited by Huber, helpful but distinguishable. It is helpful because the Seventh Circuit clearly declined to create a bright-line rule applying federal common law to *all* government procurement contracts relating to national defense.  Instead, the Seventh Circuit explained that a contractual dispute between two *potential* subcontractors on a government procurement contract does not implicate a uniquely federal interest unless the United States is exposed to some potential loss.  This case is distinguishable because its dealt with a teaming agreement and a *potential* subcontractor.  Here, there is an actual subcontract.

Considering the foregoing, the Court concludes that the connection to the prime contract

between Avondale and the Government is too far removed from the subcontract at issue in this case. Based on this finding, the Court does not reach the issue of whether there is a significant conflict between an identifiable federal policy or interest and the application of state law.

## IV. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that **Plaintiff's Motion to Remand (Rec. Doc. 9)** is **GRANTED**.  This matter is remanded to the state court from which it was removed.

New Orleans, Louisiana, this 31st day of January, 2008.

	*[signature]*
	**KURT D. ENGELHARDT**
	**UNITED STATES DISTRICT JUDGE**